## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CASE NO. _____

Allen Beaulieu, individually and D/B/A
Allen Beaulieu Photography,

        Plaintiff,

v.

Clint Stockwell, an individual; Studio
1124, LLC, a Minnesota limited liability
company and Does 1 through 7,

        Defendants.

---

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

---

For his Complaint against the above-named Defendants, Plaintiff Allen Beaulieu, by and through his undersigned counsel, states and alleges as follows:

### NATURE OF THIS ACTION

1.    This is a copyright action with related claims to recover approximately 3,000 original photographs of the artist Prince, and all copies made therefrom, which were originally created by and belong to Plaintiff Allen Beaulieu.

2.    Plaintiff seeks injunctive relief, monetary damages, statutory damages, attorneys' fees, costs and other penalties for willful copyright infringement and related legal violations by Defendant Clint Stockwell and the Doe Defendants. Plaintiff reserves

his right to move this Court at a later date, if necessary and pursuant to state law, for punitive damages.

## PARTIES

3.     Plaintiff Allen Beaulieu, doing business as Allen Beaulieu Photography, (hereinafter collectively "Plaintiff") is an individual residing in this judicial district, with his principal place of business located in the city of Crystal, Minnesota.

4.     Plaintiff is the creator, copyright registrant and legal owner of the photographs and the copyrights in question.

5.     Upon information and belief, at all relevant times herein alleged, Defendant Clint Stockwell (hereinafter "Stockwell") is an individual who resides at and transacts business from 1410 3rd Street N.E., Minneapolis, Minnesota 55413.  Upon information and belief, Defendant Stockwell also transacts business from the Minneapolis Electric Bicycle Company, located at 117 Washington Avenue North, Minneapolis, Minnesota, where Stockwell is a partial owner, manager or other officer of Minneapolis Electric Bicycle Company.

6.     Defendant Studio 1124, LLC, ("Studio 1124") is a single member limited liability company, solely-owned by Defendant Stockwell, which based upon information and belief is located at 1124 2nd Street N.E., Minneapolis Minnesota.  Studio 1124 claims to be in the business of "original artwork," "digital visualization" and "creative art design."  As its sole member, Defendant Stockwell is in sole control of Studio 1124's business operations, assets and management.  Accordingly, Stockwell and Studio 1124 will at times herein be referred to as the "Stockwell Defendants".

2

7.    Plaintiff is currently without sufficient information to determine the true names and identities of the Defendants sued herein by the fictitious designation of Does 1 through 7, inclusive, and therefore sues these Defendants by said fictitious designations ("Doe Defendants").  Plaintiff will seek leave of Court to amend this Complaint to insert their true names and capacities upon discovery.

8.    Plaintiff is further informed and believes and based thereon alleges that each of the fictitiously-named Defendants herein is responsible in some manner for the injuries, acts and damages hereinafter alleged, and at all times material herein, each of the fictitiously-named Defendants was the agent, servant, proprietor, principal, partner, employee and/or joint venturer of each of the remaining Defendants, acting within the course, scope and purpose of said agency, service, proprietorship, partnership, employment or joint venture.

9.    Defendants are jointly and severally liable for the actions of each of the other Defendants.

## JURISDICTION AND VENUE

10.    This court has original and exclusive jurisdiction of the subject matter in this action pursuant to 28 U.S.C. § 1331 and 1338(a) because the action arises under the Copyright Act, 17 U.S.C. §§ 101 et seq., which is within the exclusive jurisdiction of federal courts under 28 U.S.C. § 1331.

11.    This Court also has supplemental jurisdiction over the state law claims alleged herein, pursuant to 28 U.S.C. § 1367(a), because the claims are so related to

3

claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Defendants are subject to personal jurisdiction in this forum:   (1) as Defendant Stockwell resides in and has committed statutory violations, tortious acts and violated common laws within the State, causing harm to Plaintiff and his property within Minnesota; (2) as Studio 1124's only member, Defendant Stockwell, resides in and is a citizen of this judicial district, and (3) Defendants Stockwell, Studio 1124 and the Doe Defendants have engaged in business dealings as more thoroughly alleged herein, and otherwise regularly engage in and transact business within this judicial district.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391, since Defendants or their agents are subject to personal jurisdiction in this judicial district, a substantial part of the events or omissions giving rise to the claim occurred in this district and all or a substantial part of Plaintiff's copyright property which is the subject of this action is situated within this state.

## FACTUAL ALLEGATIONS

### Plaintiff's Time as Prince's Personal Photographer

14.     Plaintiff is and has been a professional photographer for the majority of his adult life, since approximately 1978.

15.     During his professional photographic career, Plaintiff has been employed by Rolling Stone magazine, and has otherwise been a freelance photographer, through which he has independently photographed numerous musicians, celebrities and prominent popular culture figures for decades.

4

16.     While working independently, beginning approximately in 1978 and for several years thereafter, Plaintiff photographed the iconic musician, actor and performer Prince Rogers Nelson, who was professionally and globally more commonly known during most of his career as simply, Prince.

17.     During that period of time, Plaintiff shot photographs which he licensed for use on album covers and liner artwork for three of Prince's best-known and critically-acclaimed early records "Dirty Mind," "Controversy" and "1999."

18.     Plaintiff also traveled with Prince and his bands on three separate world tours from 1980 to 1983, creating and shooting countless, unique photographs of Prince, including hard-to-find, one-of-a-kind, behind the scenes photos documenting Prince's performances and touring life.

19.     Plaintiff registered his copyrights in his collection of photographs entitled "Before Purple Rain, Prince 1979-1983" (hereinafter the "Photos") with the United States Copyright Office on November 8, 1984, pursuant to 17 U.S.C. §411(a).  See Certificate of Copyright Registration # VAU67-986 attached hereto and incorporated herein as **Exhibit A**.

20.     As a result of Plaintiff's ownership of the Photos, he has been able to license the Photos regularly throughout the numerous years since Plaintiff created the Photos.

21.     In fact, the Photos are of such unique and recognized value, having been sought after so regularly by so many people even as far back as 1984, that at that time their long-term value and popular demand was recognized by Prince's professional

manager, Robert Cavallo. As a result, in or about 1984, as Prince's movie Purple Rain was being introduced to audiences around the world, Cavallo offered Plaintiff $250,000 to buy the Photos and transfer his copyright interests to Prince.

22.    Even at that early time, Plaintiff also recognized the substantial, intrinsic value of his work and his legal rights in the Photos. Plaintiff therefore rejected Cavallo's offer in 1984 as being undervalued, preferring instead to maintain his ownership of the Photos and their copyrights.

23.    At that same time, Plaintiff determined to supplement his photography income by licensing the Photos, and intended to use such income to completely support himself financially throughout his retirement.

24.    Plaintiff has since retired from active photography work, due to his age and significant medical conditions which make it difficult, if not impossible at times, for Plaintiff to leave his residence for any great distance or length of time.

### The Speculative Book Project

25.    Plaintiff recently determined to pursue one such licensing project, by publishing a book of his Photos. Plaintiff made contact with his literary agent in New York, and was working on a speculative deal to pitch and secure a publishing contract to include his Photos.

26.    During the formulation of this book project, Defendant Stockwell was re-introduced to Plaintiff as a person who may be able to assist with production needs specifically related to the speculative book project.

27.     Plaintiff and Defendant Stockwell knew each other previously, as they attended the same high school together many years ago.  For this reason, Plaintiff decided Defendant Stockwell could be trusted to work on his book project.

28.     For the purposes of that book project, Plaintiff provided forty-two (42) copies of some of his Photos related to Prince, to be incorporated into the proposal for the book project.

29.     Stockwell told Plaintiff that if a book ever did get published which included Plaintiff's Photos, Stockwell did not want his name used or acknowledged at all as being involved with the book.

30.     Stockwell's invitation to assist Plaintiff in putting together pitch materials for that book project gave him insight regarding both Plaintiff's ownership of the approximately 3,000 Prince photographs comprising Plaintiff's collection of Photos, as well as Plaintiff's debilitating medical conditions.

31.     Plaintiff was only able to meet with Stockwell at Plaintiff's residence, due to severe medical conditions preventing him from leaving his house with any ease. Stockwell's visits to Plaintiff's house made Stockwell aware of Plaintiff's vulnerabilities and mental conditions, which include diagnosed and ongoing bouts with anxiety, depression, agoraphobia and related panic attacks, all of which now prevent Plaintiff from pursuing a normal activities and caring for himself without assistance.

### Prince's Untimely Death & Defendant Stockwell's Exploitations

32.     Unfortunately, as fans throughout the world recently learned, Prince unexpectedly died on or about April 21, 2016.

33.   The circumstances surrounding Prince's death have been particularly newsworthy in several regards, and therefore have created an unprecedented demand for all things Prince, including both his music and photographic images related to Prince.

34.   As a result, Plaintiff was immediately and repeatedly contacted by numerous media and others from around the world, with licensing requests for Prince photographs to use in news stories and various other commercial uses. Plaintiff began responding to these increasing license requests, providing many licenses and photographs from his Photos in exchange for license fee revenues.

35.   Stockwell became aware of the myriad demands for Plaintiff's Photos, and the associated revenues those demands were able to create.

36.   Within a month of Prince's tragic death, Defendant Stockwell approached Plaintiff, suggesting that he, Stockwell, would be much more efficient at making necessary copies of the Photos, so that Plaintiff could respond more efficiently to the overwhelming inquiries Plaintiff was fielding for Prince photographs from his collection of Photos.

37.   Stockwell encouraged Plaintiff, claiming his experience and work through his company, Studio 1124, created additional incentive for Plaintiff to consider Stockwell's proposal.

38.   In or about the week of May 15-21, 2016, Stockwell told Plaintiff *"I have a better scanner. I can scan your photos faster and get them all back to you within two weeks."* Plaintiff was reluctant to provide Stockwell his Photos. Stockwell continued, saying that he would buy a new iMac computer to make the process even faster, or more

efficient. Plaintiff specifically confirmed with Stockwell, "*If I let you do that, the copies you make are going to be mine.*" Stockwell, acknowledged the statement and confirmed, "*Yeah, absolutely! It's your work.*"

39. Plaintiff relied on Stockwell's statements, acknowledgements, representations, persuasion and influence, and was induced by them to ultimately provide Stockwell all of his Photos for Stockwell's stated purpose of creating digitally-scanned copies of all Photos and retuning them and the copies to Plaintiff within two weeks.

40. Therefore, sometime during the middle of May, 2016, Defendant Stockwell arrived at Plaintiff's home, along with Stockwell's 5-year old son and another man, to collect four (4) separate boxes containing all of Plaintiff's approximately 3,000 original Photos, agreeing to make the digitally-scanned copies as indicated.

41. Plaintiff provided all of the original Photos to Defendant Stockwell based upon the expressly-stated condition that the original Photos and a set of digitally-scanned copies would all be returned to Plaintiff within two weeks of that date.

42. Defendant Stockwell agreed to that condition, took possession of all of Plaintiff's original Photos, and removed them from Plaintiff's home.

43. Defendant Stockwell was even provided a 5-terrabyte drive by Plaintiff upon which the copies of the Photos were to be made, saved and returned to Plaintiff.

44. Defendant Stockwell also confirmed with Plaintiff that he was going to purchase a separate computer and scanner, to accomplish the task of making the authorized copies of Plaintiff's Photos.

45.     As Defendant Stockwell had been to Plaintiff's home on previous occasions related to the book project, he had witnessed and was aware that Plaintiff was regularly provided a receipt for Photos or other objects that were removed from Plaintiff's possession by others, for work to be accomplished off site on the book project.

46.     Defendant Stockwell did not provide Plaintiff with a receipt when he took possession of the Photos.  Instead, Stockwell arrived at Plaintiff's house with his 5-year old son, claiming he had to get going too quickly to be able to provide Plaintiff a receipt.

### Stockwell's Refusal to Return Plaintiff's Photos & Unauthorized Acts

47.     Defendant Stockwell made copies of the Photos.

48.     Two weeks after taking possession of Plaintiff's Photos, Defendant Stockwell failed to return to Plaintiff Beaulieu the Photos and the copies, as he had previously represented.

49.     Plaintiff first contacted Defendant Stockwell on or about June 21, 2016 to demand that Stockwell return the Photos and any copies.

50.     Defendant Stockwell made up various excuses for his delay in returning the Photos, but confirmed he would return them during that communication.

51.     When Defendant Stockwell again failed to return the Photos and copies as promised, Plaintiff contacted him again.  This time Defendant Stockwell began to discuss his own ideas for exploiting Plaintiff's copyrighted works.

52.     Plaintiff did not agree to any of Stockwell's unsolicited and unauthorized ideas, and again demanded the return of Plaintiff's Photos and the copies made from them.

10

53.     Defendant Stockwell told Plaintiff "*I can do anything I want with these photos.*" and told Plaintiff he refused to return to Plaintiff neither the original Photos nor the copies he made of them.

54.     On August 1, 2016, Defendant Stockwell sent Plaintiff an email, confirming that at least as early as July 15, 2016, Stockwell had been in contact with someone in Paris, Amsterdam, or both, for the purposes of publishing a book or other exploitations of Plaintiff's Photos.

55.     Defendant Stockwell has also communicated or met with others for the purposes of exploiting Plaintiff's copyrighted Photos, for profit and without Plaintiff's authorization or approval.

56.     For example, Defendant Stockwell met with Prince's sister, Tyka Nelson, at the Minnesota State Fair on August 26, 2016, for the purposes of exploiting Plaintiff's copyrighted Photos, for profit and without Plaintiff's authorization or approval.

57.     Defendant Stockwell also met with another individual, Pepe Willie, on more than one occasion beginning in August 2016 and continuing to the present, for the purposes of exploiting Plaintiff's copyrighted Photos, for profit and without Plaintiff's authorization or approval.

58.     Defendant Stockwell has sought and communicated with potential investors, either directly, through agents, or both, to finance unauthorized business ventures or transactions involving Plaintiff's Photos.

59.    Defendant Stockwell has advised at least one person that he believes he can sell copies of Plaintiff's Photos in Europe for as much as $10,000 per print, and in other circumstances he intends to sell and distribute copies for a price of $1,800 each.

60.    The Stockwell Defendants have the experience, equipment and capacity to make such copies and distribute such copies.

61.    Based upon information and belief, Defendant Stockwell has used and may be continuing to use social media, including but not limited to Snapchat, to make unauthorized distributions of unauthorized copies of Plaintiff's Photos.

62.    The Stockwell Defendants are and have been acting willfully, without authority from Plaintiff and with blatant and willful indifference to Plaintiff's legal rights to use the Photos for these many purposes, other than making one set of digital copies for Plaintiff Beaulieu as represented.

63.    On August 31, Defendant Stockwell sent an email to Plaintiff, admitting that he was in possession of "the thousands of images [Plaintiff] gave [Stockwell]."  That email also confirmed Stockwell had made copies of the Photos.  Stockwell ended the email referencing a bill he attached to the email, intimating Plaintiff would have to pay $24,000 to Stockwell or Studio 1124 before Stockwell would return Plaintiff's Photos or the copies Stockwell made.

64.    Plaintiff responded to that email on the same date, again demanding to Stockwell, "*Just bring my film back.*"

65.    Stockwell ignored Plaintiff's repeated demand, and did not return the Photos or copies.

66.     On September 7, 2016, Plaintiff was forced to hire an attorney, who sent Defendant Stockwell a letter demanding immediate return of the Photos, and any copies made therefrom by September 15, 2016, and further demanding that Stockwell immediately cease and desist from using or distributing all such digital images and film.

67.     A copy of Plaintiff's Certificate of Copyright Registration #VAU67-986 (Exhibit A) was enclosed in that letter, providing the Stockwell Defendants clear evidence of Plaintiff's ownership rights in the Photos.

68.     The Stockwell Defendants did not return the Photos after clear demand from Plaintiff's counsel.

69.     Neither did the Stockwell Defendants dispute Plaintiff's ownership of the Photos.

70.     Instead, Stockwell responded to Plaintiff's attorney by email dated September 20, 2016.  In that email, Stockwell again admitted to his possession of the 3,000 images belonging to Plaintiff.  Stockwell also made vague and unsupported assertions that he had been working with Plaintiff and another person for seventeen months, since approximately April of 2015, on the speculative book project indicated above.

71.     Plaintiff's attorney responded by email to Stockwell that same date, again advising him that Stockwell was not authorized to use or keep possession of the Photos and digital images, repeating his demand to return those items, confirming that Stockwell's continued refusal to do so constituted stealing of the copyrighted works, and

making a renewed demand to pursue legal recourse if arrangements were not made that day by Stockwell to return the Photos and copies.

72.     Defendant Stockwell again ignored Plaintiff's counsel's demands and warnings, and did not return the Photos or copies as demanded.

73.     Plaintiff then retained the undersigned, who sent Defendant Stockwell another demand letter, dated October 6, 2016, via electronic mail addressed to the email address Stockwell has used to communicate with Plaintiff, and via U.S. mail addressed to Stockwell's residence address.

74.     That letter again advised Stockwell that Plaintiff was the registered owner of copyrights in the Photos, that Stockwell had previously been provided documentary proof of that registration, that Stockwell was interfering with Plaintiff's exclusive rights in those copyrights, and that Stockwell's acts were tortious and violated other legal rights against Plaintiff. That letter again demanded Stockwell cease and desist all violative acts, and return the Photos and copies to Plaintiff's counsel's office by October 10, 2016.

75.     Defendant Stockwell again ignored Plaintiff's counsel's demands and warnings, and did not return the Photos or copies.

76.     The Stockwell Defendants have unlawfully and without authority gained possession of, converted and used Plaintiff's copyrighted works in connection with commercial negotiations, transactions or proposals.

77.     Since the Photos have been out of Plaintiff's possession, he has received numerous licensing requests for the Photos, which he has not been able to complete due

to the Stockwell Defendants' refusal to return Plaintiff's Photos in their possession or control.

78.    Although duly demanded, on numerous occasions by both Plaintiff and his legal counsel, the Stockwell Defendants have failed to return to Plaintiff the Photos and copies.

79.    Upon information and belief, the Defendants have made uses of the Photos and have failed to account to Plaintiff for such usage.

80.    Based upon information and belief, Defendant Stockwell is acting on his own, through his solely-owned and controlled business, Defendant Studio 1124, and in concert with one or more Doe Defendants, to make unauthorized uses of Plaintiff's copyrighted works, in contravention of Plaintiff's exclusive rights under the Copyright Act, and in violation of other laws as further alleged below.

## COUNT ONE

## COPYRIGHT INFRINGMENT
(Stockwell Defendants)

81.    Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

82.    Plaintiff is the sole author, owner and proprietor of all rights, title and interest in and to the copyrights of the Photos entitled "Before Purple Rain, Prince 1979-1983" registered with the United States Office of Copyright pursuant to 17 U.S.C.A. 411(a).

83.     Defendants Stockwell and Studio 1124 have infringed and continue to infringe Plaintiff's copyrights, in violation of the Copyright Act, 17 U.S. C. § 101 *et, seq.*, by knowingly and willfully copying, displaying, distributing and publishing one or more of the Photos, or copies or other derivative works made therefrom, without Plaintiff's consent.

84.     As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but not less than seventy-five thousand dollars ($75,000).

## COUNT TWO

### INJUNCTION
(All Defendants)

85.     Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

86.     As a result of the aforementioned occurrences, Plaintiff has been damaged and continues to suffer irreparable harm to his copyrighted works, for which monetary damages may be insufficient.

87.     Wherefore, Plaintiff prays for an injunction pursuant to 17 U.S.C. § 502, to prevent and restrain infringement, by ordering Defendants not to display, publish, make copies or derivative, distribute, or in any way disseminate the copyrighted materials of Plaintiff.

## COUNT THREE

### WILLFUL STATUTORY INFRINGMENT
(Stockwell Defendants)

88.     Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

89.     As a result of the Stockwell Defendant's willful and knowing conduct, they have infringed Plaintiff's copyrighted works in deliberate disregard and with malice toward Plaintiff and his rights.

90.     Wherefore, Plaintiff seeks an Order to be entered pursuant to 17 U.S.C. § 504, awarding enhanced statutory damages up to one hundred and fifty thousand dollars ($150,000) for each and every infringement of Plaintiff's copyrighted works.

## COUNT FOUR

### CONVERSION
(Stockwell Defendants)

91.     Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

92.     The Stockwell Defendants have converted Plaintiff's Photos, personal property and intellectual property, all of which belong to Plaintiff Beaulieu.

93.     The Stockwell Defendants do not own Plaintiff's Photos, personal property or intellectual property.

94.     The Stockwell Defendants do not have a legal right or justification to withhold from Plaintiff his Photos, personal property or intellectual property.

95.     As a result of the Stockwell Defendants' conversion of Plaintiff's Photos, personal property and intellectual property, Plaintiff has been damaged in an amount to be determined at trial, but not less than seventy-five thousand dollars ($75,000).

## COUNT FIVE

### UNJUST ENRICHMENT
(Stockwell Defendants)

96.     Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

97.     Stockwell has received property and monies as more thoroughly described above, which do not belong to Stockwell.

98.     It would be unjust and inequitable for Stockwell to retain the benefit of such property and any monies derived from such property.

99.     As a result, the Stockwell Defendants have been unjustly enriched at Plaintiff's expense, and Plaintiff therefore seeks damages in an amount to be determined at trial, but not less than seventy-five thousand dollars ($75,000).

## COUNT SIX

### FRAUD
(Stockwell Defendants)

100.    Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

101.   The Stockwell Defendants, by and through Stockwell, made false representations to Plaintiff as more specifically and thoroughly alleged in paragraphs 36-38, 42 and 44, above.

102.   Those representations were knowingly false when made by Stockwell, or Stockwell had no intention of returning the Photos and copies he made to Plaintiff within two weeks, or at all, at the time the representations were made.

103.   Those representations were made by Stockwell so that he could gain physical possession of the Photos.

104.   Those representations were intended to induce Plaintiff's reliance on them, and Plaintiff reasonably relied on these statements.

105.   Defendants' acts constitute intentional misrepresentation, deceit, and concealment of material facts known to the Defendants with the intention of unlawfully depriving Plaintiff of his Photos, his copyrights and the ability to exercise his exclusive rights therein, all to Plaintiff's detriment.

106.   As a result of Defendants' fraud, Plaintiff has been damaged in amounts to be determined at trial, but not less than seventy-five thousand dollars ($75,000).

## COUNT SEVEN

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE
(Stockwell Defendants)

107.   Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

19

108.   Plaintiff has lost, and continues to lose, certain licensing opportunities with innumerable potential licensees who were and are willing and able to license Plaintiff's Photos of Prince.

109.   Stockwell has acted tortiously by interfering with Plaintiff's prospective business opportunities with those licensees or customers.

110.   Stockwell's actions were done without legal justification and have damaged Plaintiff's prospective business advantage.

111.   Stockwell's actions have caused, and will continue to cause, damage to Plaintiff Beaulieu in an amount to be determined at trial, expected to be in excess of seventy-five thousand dollars ($75,000).

## COUNT EIGHT

### VIOLATION OF MINNESOTA VULNERABLE ADULT ACT
### MINNESOTA STATUTES §§ 626
(Stockwell Defendants)

112.   Plaintiff re-alleges and incorporates by reference as though set forth in full the allegations contained in the paragraphs above.

113.   Plaintiff is a Vulnerable Adult, as that term is defined in Minnesota Statutes § 626.557 subdivision 21.

114.   The Stockwell Defendants have financially exploited Plaintiff by willfully using, withholding or disposing of funds or property of a vulnerable adult.

115.   Pursuant to Minnesota Statute § 626.557, subdivision 20, plaintiff has a cause of action against the Stockwell Defendants and any Doe Defendant who has financially exploited Plaintiff.

116.   As a result of Defendants' financial exploitation, Plaintiff is entitled to recover damages equal to three times the amount of compensatory damages caused by each Defendant, or $10,000, whichever is greater, in addition to Plaintiff's reasonable attorneys; fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.   That Judgment be entered for Plaintiff and against Defendants, jointly and severally, on each of Plaintiff's claims for relief;

2.   That Judgment be entered against the Stockwell Defendants in favor of Plaintiff for such damages as Plaintiff has sustained in consequence of each of Defendants' separate acts of copyright infringement;

3.   That an Order be entered compelling Defendants to account for all gains, profits and advantages derived by each Defendant by its infringement of Plaintiff's copyrights, disgorgement of same paid to Plaintiff as well as any other such damages as to this Court shall determine to be proper within the provisions of the copyright statutes;

4.    That injunctive relief be granted preventing and restraining infringement of Plaintiff's copyrights, by Ordering Defendants and their agents, servants, employees, attorneys and those acting in concert or participation with any of them, not to display,

publish, make copies or derivatives, distribute or in any way disseminate the copyrighted Photos, copies or derivative works exclusively belonging to Plaintiff, and further that they:

i.    Delete and disable access to Plaintiff's copyrighted Photos, including but without limitation, deleting all copies of Plaintiff's copyrighted Photos from any database, server, or other storage device owned, controlled, possessed or authorized by Defendants;

ii.   Cease and refrain from producing any copies of the Photos, preparing derivative works, distributing the Photos or copies thereof, publicly displaying the Photos or copies thereof, or otherwise infringing Plaintiff's Photos, including without limitation, ceasing and refraining from transmitting, copying, and/or broadcasting Plaintiff's Copyrighted Photos;

iii.  Recall and deliver for destruction all copies, derivatives, or other products which infringe Plaintiff's copyrights;

viii. Be required, within thirty days after service of any Order or Judgment from this Court, with notice of entry thereof upon it, to file with the Court and serve upon Plaintiff's attorneys a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

5.     That an Order be entered pursuant to 17 U.S.C.A. § 503 for the impounding of all materials created or used in the violation of Plaintiff's exclusive copyrights;

6.     For maximum statutory damages pursuant to  17 U.S.C. § 504, with respect to each copyrighted work infringed, or for such other amount as may be proper or, alternatively, at Plaintiff's election, full restitution, actual damages suffered as a result of the infringement;

7.     Any and all damages sustained by Plaintiff resulting from Defendants' wrongful, tortious acts and statutory violations;

8.     For Plaintiff's attorneys' fees and full costs, pursuant to federal and state statutes;

9.     That Plaintiff be awarded pre-judgment and post-judgment interest on its Judgment; and

10.     For such other and further relief as this court deems just and proper.

## JURY DEMAND

Plaintiff, pursuant to Fed. R. Civ. P. 38(b), demands a trial by jury as to all issues so triable.


Dated:  October 21, 2016                  **HELLMUTH & JOHNSON, PLLC**

                                          By:   */s/ Russell M. Spence, Jr.*
                                                Russell M. Spence (ID No. 241052)
                                                8050 West 78th Street
                                                Edina, MN 55439
                                                Email: mspence@hjlawfirm.com
                                                Telephone: (952) 941-4005
                                                Facsimile: (952) 941-2337

                                          **ATTORNEYS FOR PLAINTIFF**

2882720

## INDIVIDUAL VERIFICATION

Plaintiff, Allen Beaulieu, states and affirms:

1.      That I am Plaintiff in the action herein.

2.      I declare under penalties of perjury that I have read the annexed Complaint and know of the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.  Everything I have stated in this Verification is true and correct.

Dated: October 21, 2016

_____
Allen Beaulieu
D/B/A Allen Beaulieu Photography