UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Allen Beaulieu Photography, | CASE NO. 16-cv-3586 (DWF/HB) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SANVIK'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| Clint Stockwell, an individual; Studio 1124, LLC, a Minnesota limited liability company, Thomas Martin Crouse, an individual, Charles Willard "Chuck" Sanvik, an individual and Does 3 through 7, | |
| Defendants. | |

## INTRODUCTION

This is a lawsuit based on the Defendants taking from Plaintiff valuable photographs of the internationally-known artist Prince, which Plaintiff personally shot and owned. Those photographs were physically taken from Plaintiff while he was working on a specific book project, for a specific publisher, prior to Prince's recent death. After Prince died, two of the Co-defendants, Clint Stockwell ("Stockwell") and Thomas Crouse ("Crouse") physically took over three thousand (3,000) physical photographs from Plaintiff's house, claiming they would digitally scan them and return them to Plaintiff within two weeks. That did not happen.

After more than six months, eight express demands by Plaintiff to return the photographs, two separate law firms assisting Plaintiff and ultimately this instant lawsuit being filed, Defendants finally returned some, but not all, of Plaintiff's valuable, physical

photographs. Instead, during that 6-month period, and continuing since then, the Co-defendants acted in concert or conspiracy with each other, including Defendant Charles Willard "Chuck" Sanvik ("Sanvik"), to plan for other exploitations, distributions and investments in projects with Plaintiff's valuable photographs, *but to Plaintiff's exclusion* and over his repeated objections. Rather than honoring Plaintiff's property rights and objections, the Co-defendants have plotted together to exploit Plaintiff's photographic work for profit, without Plaintiff's involvement.

Defendant Sanvik was recently, specifically added as a defendant in this action, replacing a Doe defendant previously identified in the initial Complaint. Defendant Sanvik *first* unsuccessfully opposed Plaintiff's effort to add him as a party to this litigation, suggesting the Amended Complaint's claims against Sanvik were brought in bad faith, were prejudicial to him and were futile. *See* Order, Doc. 46 pp. 3-4. At oral argument, Sanvik recognized the weakness of two out of three of his arguments, abandoned them, and then only argued Plaintiff's claims against him would be futile. *Id.* Magistrate Judge Bowbeer disagreed, evaluating and rejecting the futility argument on Fed. R. Civ. P. 12(b)(6) grounds. *Id.*

Despite Sanvik's extensive involvement in, conceiving of, preparing for, and investing in these various unauthorized projects to use Plaintiff's photographs, he now seeks to be dismissed from this lawsuit, claiming Plaintiff's Amended Complaint fails to state a claim against him. The Amended Complaint *does* state a claim against Defendant Sanvik, both directly and under conspiracy theories with his Co-defendants.

Sanvik injected himself into this dispute. Evidence being produced in early discovery has justified naming him as a party. Co-defendant Sanvik is pivotal to the just and proper outcome of this lawsuit. His motion should therefore be denied.

## RELEVANT FACTS

Although the Amended Complaint states all relevant facts to be considered in a motion to dismiss, Plaintiff will filter, accentuate and amplify certain of those facts here, for this Court's benefit and efficient analysis of this motion. Facts or additional documents offered by Declaration are materials embraced by the complaint, developed though initial discovery and therefore proper for this Court's consideration.

Plaintiff is a professional photographer and the creator, copyright registrant, and legal owner of the Photographs. (Amended Complaint, ECF Doc. 47 ("*Am. Compl.*") ¶¶ 4, 16, 21). He decided to publish a book of his photographs and was in specific, ongoing discussions about a particular book project with his literary agent. (*Am. Compl.* ¶ 27).

Plaintiff contacted Defendants Stockwell and Crouse to assist with production needs for the book project, giving Stockwell and Crouse access to approximately 3,000 original, physical photograph of Prince for the book project. (*Am. Compl.* ¶¶ 28-30, 42).

Defendant Sanvik was not involved in the specified book project. However, Sanvik was for some other reason provided approximately 120 of Plaintiff's photographs, by Co-Defendant Stockwell, via email on April 27, 2016. (*Am. Compl.*" ¶ 50 and Declaration of Mary B. Beeman ("*Beeman Dec.*") ¶ 3 and Exh. A).[1] Approximately one

---

[1] All references to Exhibits will be those attached to the Declaration of Mary B. Beeman, submitted herewith in support of Plaintiff's Memorandum in Opposition to Defendant Sanvik's Motion to Dismiss.

week after Co-defendant Stockwell sent Defendant Sanvik the unauthorized email with over 120 of Plaintiff's photographs, Co-defendant Stockwell removed the approximately 3,000 original, physical photographs from Plaintiff's possession. (*Am. Compl*. ¶ 42).

Plaintiff was assured by Defendant Stockwell that he would return all of Plaintiff's photographs and the digital scans Stockwell planned to make within two weeks of Stockwell taking them from Plaintiff. Stockwell did not return the original photographs within two weeks, or even within 6 months. (*Am. Compl*. 51, 69, 80) During that same timeframe, Plaintiff repeatedly demanded that Stockwell return his Photos. (*Am. Compl*. 52, 68-70). Plaintiff did not receive return of the Photos after all of his demands. (*Am. Compl*. ¶¶ 51, 69, 73, 77, 80 and 83).

During the same timeframe that Plaintiff was unsuccessfully, repeatedly demanding his photograph be returned, Sanvik and Co-defendant Stockwell were actively emailing Plaintiff's photographs and communicating with each other via email, text and phoning each other. (*Am. Compl*. ¶¶ 54-56; *Beeman Dec*. ¶11, Exhs A - E)

After this present lawsuit was filed, Stockwell finally returned a portion of the original photographs to Plaintiff Beaulieu, but not all of them. (*Am. Compl*. 83-85, 87). Also after this present lawsuit was filed, Sanvik continued his constant persuasion against Plaintiff to dismiss this lawsuit against Stockwell and to license Sanvik and Co-defendant Stockwell the rights to Plaintiff's Photos. (*Beeman Dec*. Exh. E.).

Defendant Sanvik has repeatedly stated he wants to invest in projects to exploit Plaintiff's Prince photography beyond the book project. (*Beeman Dec*. Exhs. E and F).

4

Sanvik acknowledged that he knows the book project is "90 % completed, but he wants to do other projects. (*Beeman Decl.*, Exh F, p. 2)

Sanvik called and texted Plaintiff and his counsel various times. (*Beeman Decl.*, Exh E). Plaintiff again demanded return of his Photos, this time directly to Defendant Sanvik. (*Beeman Decl.*, Exh. E) Sanvik rebuffed Plaintiff's demand for return of his photographs, on behalf of Co-defendant Stockwell. (*Id*). Sanvik also repeatedly sought to separate Plaintiff from his legal counsel, and tried repeatedly to create mistrust by Plaintiff of his legal counsel. (*Id.*).

Plaintiff alleges at various points throughout the Amended Complaint that Sanvik acted in concert with the Co-defendants in taking, retaining, wrongfully withholding, exploiting and interfering with Plaintiff's ability to possess and use his Photographs. (*Am. Compl.* ¶¶ 10, 55-59, 62, 65-66, 81, 87, 116-118).

Sanvik and his Co-defendants still possess some of Plaintiff's physical Photographs and copies of the Photographs. (*Am. Compl.* ¶¶ 83-85, 87).

## ARGUMENT

I. **STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The court is to construe the complaint "liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. To withstand a motion to dismiss, the factual allegations need not be determinative. They must, instead, show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Iqbal* court stated: "determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. PLAINTIFF HAS STATED A PLAUSIBLE CLAIM FOR CONVERSION AGAINST SANVIK.

Beaulieu has pled a direct conversion claim against Sanvik. In addition, Sanvik is also liable for his conversion acts with Co-defendants, Stockwell and Crouse, as pled under a conspiracy theory. *MathStar, Inc. v. Tiberious Capital II, LLC,* 712 F. Supp. 2d 870, 885 (D. Minn. 2010).

### A.   Direct Conversion is Alleged Against Sanvik.

Conversion is the "act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession" or "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." *Paisley Park Enterprises, Inc. v. Boxill*, 253 F. Supp. 3d 1037, 1045 (D. Minn. 2017) (citing *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (alterations in original) (quotations omitted)).

The Amended Complaint clearly alleges that Sanvik has taken and retained original photographs owned by Plaintiff Beaulieu, and that he is interfering with Plaintiff's legal right to possession and use of those Photos. (*Am. Compl*. ¶¶ 66, 85, 87, 99). Such factual allegations satisfy both elements of a direct conversion claim against Sanvik.

Furthermore, contrary to the cherry-picked facts from the Amended Complaint that Defendant Sanvik wants the Court to focus on, this is not a case where Plaintiff Beaulieu retained original copies of his photographs, and Defendant Sanvik only has

7

digital copies of the roughly 120 images Stockwell emailed to Sanvik in an effort to initiate an unapproved project without Plaintiff's knowledge. Rather the photos converted were the originals. (*Am. Compl.* ¶ 42). Not all of the original, physical photos taken from Plaintiff have been returned. (*Am. Compl.* ¶¶ 83, 85, 87). *All* facts alleged by Plaintiff in his Amended Complaint are to be considered, and at this stage, accepted as true. *Morton*, 793 F.2d at 187.

Contrary to Defendant Stockwell's attempt to claim "only copies have not been returned" (*See* Def. Sanvik's MOL (Doc. 56) pp.7-8), a number of the <u>original</u> <u>photos</u> that were used to create the 120 copies emailed to Sanvik have not been returned to Plaintiff. (*Beeman Dec.* ¶4). As a result of the conversion, Beaulieu is deprived of his possession of his physical photographs, and cannot use them to license to others because the physical photos are no longer in his possession. (*Am. Compl.* ¶¶ 82, 87).

### B. The Amended Complaint Also States a Conspiracy to Convert Claim Against Sanvik.

In order to extend liability based on conspiracy it is only necessary to plead facts sufficient to allow a reasonable inference that the defendants agreed to accomplish a prohibited purpose, and took concerted actions to achieve that purpose. *Marty H. Segelbaum, Inc. v. MW Capital, LLC,* 673 F.Supp.2d 875, 880–81 (D. Minn. 2009). The Defendants' action and liability must be based on an underling tort. *Id.*

Where a complaint implicates each defendant conspirator in a common "scheme", a motion to dismiss is not warranted, even given the greater or lesser roles played by each participant. See *ECTG Ltd., Trustwater, Ltd. v. O'Shaughnessy,* No. CIV. 14-960

DSD/JJK, 2014 WL 6684982, at *4 (D. Minn. Nov. 25, 2014). Where the underlying tort claim is properly pled, liability by conspiracy may be properly applied. See *N. PCS Servs., LLC v. Sprint Nextel Corp.,* No. CIV052744(RHK/RLE), 2006 WL 1072075, at *6 (D. Minn. Apr. 21, 2006). The conspiracy claim must be based on an underlying tort. *Strategic Energy Concepts, LLC v. Otoka Energy, LLC,* No. CV 16-463 (MJD/BRT), 2016 WL 7627040, at *18 (D. Minn. Nov. 18, 2016), report and recommendation adopted, No. CV 16-463 (MJD/BRT), 2017 WL 29663 (D. Minn. Jan. 3, 2017)

The Amended Complaint does, in fact, detail the common "scheme" entered into by the Stockwell Defendants, Crouse, and Sanvik to commit the underlying tort of conspiracy. Stockwell and Crouse went to Beaulieu's house to retrieve the photos under the auspices of a project approved by Beaulieu. (*Am. Compl.* ¶ 48). Stockwell, Crouse, and Sanvik then began communicating and putting their common scheme in motion to use the photographs on different projects, without securing Beaulieu's permission. (*Am. Compl.* ¶¶ 55-66). Early discovery evidence corroborates the allegations in Amended Complaint. (*Beeman Dec.* ¶¶ 3-10 and Exhs. A-F). Sanvik, and others continue to hold Beaulieu's photographs and are using them in "projects" and "proposals" against Beaulieu's will. (Am. Compl. ¶¶ 65, 87).

Thus it is clear that the Amended Complaint alleges direct acts of conversion by Sanvik, as well as clearly alleging the requisite conspiracy scheme between Sanvik, Crouse, and the Stockwell Defendants to convert Plaintiff's photos and other property. Accordingly, Defendant Sanvik's motion to dismiss should be denied.

### C.   Defendant Sanvik's Arguments to Dismiss are Without Merit.

Defendant Sanvik's arguments to dismiss the conversion claim against him can be summarily dispatched, as they do not correctly state or apply conversion law to the facts of this case.

Sanvik attempts three separate arguments claiming the conspiracy to convert claim must fail, because: (1) the Amended Complaint fails to state that Sanvik deprived Plaintiff Beaulieu of any property, (2) conversion does not extend to intellectual property, and (3) the Amended Complaint does not plead a "meeting of the minds".

#### 1.   The Amended Complaint Sufficiently Alleges Conversion.

As argued *supra*, the Amended Complaint alleges that Sanvik deprived Plaintiff Beaulieu of his physical property in the form of his Photos. (*Am. Compl*. ¶ 85, 87, 99). Even if Sanvik believed he acquired the photographs from one authorized to transfer them, once Beaulieu demanded they be returned, refusal by Sanvik constituted conversion.  *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn. Ct. App. 1986); *Hindahl v. American Loan Soc.,* 180 Minn. 447, 449, 231 N.W. 408, 409 (1930). Beaulieu demanded return of the original photos many times, including directly to Defendant Sanvik.  Plaintiff has not received all of his photos and has alleged that Sanvik still possesses them, either alone or as part of a common scheme with the co-defendants.

#### 2.   Intellectual Property Can be Converted.

Generally, intangible personal property, such as intellectual property may be the subject of conversion. *United States v. May*, 625 F.2d 186, 190 (8th Cir. 1980).  In order to properly state a conversion claim related to material for which Beaulieu holds a

copyright, Beaulieu must plead that Sanvik deprived him of the "physical property embodying the plaintiff's work". *See e.g. Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 453 (E.D. Pa. 2015). In this case Beaulieu alleges exactly that, physical deprivation of the original photographs. (*Am Compl*. 47 ¶ 85, 87, 99). The unauthorized taking of the physical embodiment of the copyrighted work (i.e. conversion) is easily distinguished from an allegation of unauthorized reproduction or distribution of a copyrighted work, which is the subject of a copyright claim. *See e.g. Coyne's & Co. v. Enesco, LLC*, 565 F. Supp. 2d 1027, 1047 (D. Minn. 2008).

### 3. A Meeting of the Minds is not Required for Conspiracy to Create Liability.

Sanvik cites *Boone v. PCL Constr. Servs.*, 2005 U.S. Dist. LEXIS 41564 at *19 (D. Minn. July 29, 2005) for the proposition that a conspiracy requires a "meeting of the minds". *Murrin* v. *Fischer*, 2008 U.S. Dist. LEXIS 112366 at *57 (Jan. 18, 2008), *adopted by* 2008 U.S. Dist. LEXIS 13767 (Feb. 25, 2008) also cited by Sanvik uses the phrase "meeting of minds".

In *Boone* the court noted that the alleged conspirator defendant was merely alleged to have "kno[w]n of, acquiesced in, and/or approved of" the other defendants' actions. 2005 U.S. Dist. LEXIS 41564 at *20. The court ruled that such a bare allegation is not sufficient to plead a claim of conspiracy. *Id.* Here, Sanvik is so deeply engrossed in the scheme that he is actively investing in it, regularly communicating with Co-defendant Stockwell about it, exchanging unauthorized copies of Plaintiff's photos, putting together proposals, bringing in other partners, and repeatedly, inappropriately communicating with

11

Plaintiff, a represented party, to try to separate Plaintiff from his legal counsel who is actively prosecuting this lawsuit on Plaintiff's behalf.

Likewise in *Murrin*, the court noted that the subject pleading was so bare boned that the alleged conspirator would have no idea what transfers she is accused of participating in or with whom she is alleged to have conspired with, thus there can be no liability for conspiracy. 2008 U.S. Dist. LEXIS 112366 at *59. Here, again, the Amended Complaint is twenty-five pages long, with specific allegations against all Co-defendants, including Sanvik. It is hard to consider how the Amended Complaint should be further elongated to "adequately" plead these present claims against Defendant Sanvik. It should not, and Sanvik's motion should be denied.

### III. PLAINTIFF HAS STATED A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE AGAINST SANVIK.

The Amended Complaint clearly alleges a tortious interference with prospective business advantage claim against Sanvik. In addition, liability for the tortious interference by the Stockwell Defendants and Crouse extends to Sanvik by virtue of his conspiracy with them. *MathStar, Inc.,* 712 F. Supp. 2d at 885.

#### A. <u>Tortious Interference is Alleged Against Sanvik</u>.

To establish tortious interference with a prospective business advantage, a plaintiff must show:

> (1) the existence of a reasonable expectation of economic advantage or benefit belonging to plaintiff; (2) that the defendants knew of that expectation; (3) that defendants wrongfully and without justification interfered with plaintiff's reasonable expectation; (4) that in the absence of the defendants' wrongful act, it

is reasonably probable that plaintiff would have realized the economic advantage or benefit; and (5) that plaintiff sustained damages.

*Munro*, 2016 WL 5660422, at *8.

Plaintiff's Amended Complaint alleges that he was involved in a specific book project. (*Am. Compl.* ¶ 27). It is pled, and Sanvik certainly has indicated, that he knew of the book project. (*Am. Compl.* ¶ 55, *Beeman Dec.* ¶ 10, Exh. F, p. 2). The Amended Complaint alleges Plaintiff has lost opportunities to license his photographs because Sanvik has acted wrongfully, interfering with Plaintiff's prospective business opportunities, "by refusing to return all of Plaintiff's Photos and copies made from them, by creating circumstances whereby Plaintiff cannot proceed with business opportunities, by attempting to exploit and distribute Plaintiff's Photos without Plaintiff's involvement and to his exclusion and by communicating with others inconsistent with and in opposition to Plaintiff's legal and property rights" (*Am. Compl.* ¶ 116). The Amended Complaint also alleges Defendant wrongfully and without justification interfered with plaintiff's reasonable expectations to exploit his own photographs. (*Am. Compl.* ¶¶59, 62, 65-66, 83, 85, 87,117).

At least as to the book project, Plaintiff alleges he "has lost" that opportunity, because the photos were not available during the time the Plaintiff was working on the book project. (*Am. Compl.* ¶115). Having lost that book publishing opportunity, it is clear Plaintiff has suffered damages. One need only look to the myriad of books recently published and on the market involving Prince. Plaintiff's book, which he had been working on for months, is not one of the many currently published and earning money,

despite his work for months on that specific, particular book project. Plaintiff has adequately pled a tortious interference claim against Sanvik and his motion should be denied.

### B.     Conspiracy to Tortiously Interfere is Alleged Against Sanvik.

The Amended Complaint also alleges that Sanvik and his Co-defendants have prevented Plaintiff Beaulieu from moving forward with business opportunities, by depriving him of the opportunity to license or sell his photos. (*Am. Compl.* ¶ 116). As a result of the photos being out of his physical possession and control, Beaulieu has lost the ability to license them, despite their increased value in the wake of Prince's death. (*Am. Compl.* ¶¶ 23, 35, 36). Beaulieu has been unable to complete his book project, and other licensing requests seeking his photographs, due to Sanvik's and the other Co-defendants wrongful interference with Plaintiff's possession of his own photos. Their wrongful interference has prohibited Plaintiff from proceeding with the certain licensing opportunity; the publication of the book Plaintiff had been working on for a year. (Am. Compl. ¶ 82). Taking Plaintiff's allegations as true, as is required when considering a 12(b)(6) motion to dismiss, this interference is sufficient to allege a conspiracy claim of tortious interference with prospective business advantage. *MathStar, Inc.,* 712 F. Supp. 2d at 885.

The Stockwell Defendants, Crouse, and Sanvik have also planned and discussed a plot to use Plaintiff's photos beyond the book project, against which they have wrongfully interfered. (Am. Compl. ¶ 55). Sanvik's actions in a common scheme with The Stockwell Defendants and Crouse have deprived Beaulieu of the ability to market

and sell the Photos on his own. (*Am. Compl.* ¶¶ 82, 116).  The common scheme involved distributing the Photos to others in an attempt to generate interest in new projects, despite Beaulieu's repeated objections and demands for return of his Photos.  (*Am. Compl.* ¶¶ 57, 58, 60, 61, 87).

Thus the Amended Complaint states both a tortious interference claim directly against Sanvik, and alleges a conspiracy with the other Defendants to tortiously interfere.  The common scheme to deprive Beaulieu of his Photos directly resulted in his loss of a prospective business advantage in the form of licensing his Photos to the anticipated book publishing project, and other opportunities.

**IV.   IF THIS COURT FINDS PLAINTIFF HAS NOT STATED PLAUSIBLE CLAIMS AGAINST SANVIK, PLAINTIFF SHOULD BE ALLOWED TO AMEND HIS COMPLAINT.**

Plaintiff Beaulieu firmly believes he has adequately pled conversion and tortious interference with prospective business advantage claims against Defendant Sanvik.  Assuming, *arguendo*, that Plaintiff's Amended Complaint is in some manner lacking, Plaintiff hereby moves this Court for an opportunity to cure any deficiencies found by this Court to be lacking.  Defendant Sanvik is a proper party to this litigation.  Defendant Sanvik should be involved in the process to get this matter resolved, and should further be governed by any settlement agreement or Consent Judgment which may be entered in this matter.  As previously argued, he certainly has injected himself into the conflict.  Further, early evidence confirms he has been instrumental in the Co-defendants' unauthorized activities surrounding Plaintiff's photography, personal and intellectual property.

In the event the Court disagrees, decisions from the Eighth Circuit and this Court "generally favor" any dismissal under Fed. R. Civ. P. 12(b)(6) to be without prejudice. *Holmseth v. City of E. Grand Forks*, Civil No. 14-2970 (DWF/LIB) 2015 WL 4488424, at *20 (D. Minn. July 23, 2015)(Brisbois, Mag. J. as adopted by Frank, J.). This is especially the case where there is no evidence of persistent pleading failures. *Id*. In this instant case, no challenge to the original Complaint was made. Defendant Sanvik then was unsuccessful in challenging the Amended Complaint on futility grounds. There can be no sound argument that "persistent pleading failures" exist in this case to date.

Plaintiff asserts he has met his burden in alleging Sanvik is a proper party in the current claims pled. In the alternative, Plaintiff respectfully y requests that he be allowed to amend his Complaint to continue to proceed with appropriate claims against Co-defendant Sanvik, in this action, for judicial economy.

## V.   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF AGAINST SANVIK.

### A.   Sanvik's Position Was Previously Rejected by This Court.

Sanvik's argument was briefed and decided against him, in his opposition to Plaintiff's motion for leave to Amend. Plaintiff argued against Sanvik's contention, pursuant to Federal Rule of Civil Procedure 65(d)(2)(C). That rule indicates that any injunction ultimately issued in this matter can and should bind the parties to this lawsuit, the parties' officers, agents, servants, employees, attorneys and other persons who are in active concert or participation with anyone listed above in this sentence. *Fed. R. Civ. P.*

65(d)(2)(A)-(C).  Magistrate Bowbeer found in favor of Plaintiff in response to Sanvik's argument.

> B. **There Continues to be a Basis for Injunctive Relief against Sanvik.**

Since there is an underlying cause of action against Sanvik that entitles Beaulieu to injunctive relief, this claim should not be dismissed.  Sanvik cites *Estate of Lane* for the proposition that injunctive relief as not an independent cause of action.  However, in that case the court dismissed the separate claim for injunctive relief because there was no wrongful action by the defendant justifying an injunction.  *Estate of Lane v. CMG Mortg., Inc.*, No. CIV. 14-3277 JRT/LIB, 2015 WL 2195176, at *10 (D. Minn. May 11, 2015).  Only where the underlying claim justifying injunctive relief is dismissed is it appropriate to dismiss the claim for injunctive relief.  See *Scott v. Wells Fargo Bank, N.A.*, No. CIV. 10-3368 MJD/SER, 2011 WL 3837077, at *11 (D. Minn. Aug. 29, 2011).

In this case there is a cause of action against Sanvik for conversion and tortious interference with prospective business advantage.  As argued above, both claims have been adequately pled.  Sanvik does not argue, because he cannot, that injunctions are not available for either claim.

Indeed, injunctions are an available remedy for tortious interference with a prospective advantage.  See e.g. *Minnesota Made Hockey, Inc. v. Minnesota Hockey, Inc.*, 761 F. Supp. 2d 848, 861 (D. Minn. 2011) (motion for preliminary injunction on a claim of tortious interference with prospective business relationship denied on other grounds); *Ingenuit, Ltd. v. Harriff*, 33 A.D.3d 589, 590, 822 N.Y.S.2d 301, 303

(2006)(motion for preliminary injunction on tortious interference with prospective business relationship claim granted).

In addition, injunctions are an available remedy for conversion.  See e.g. *Menzies Aviation (USA), Inc. v. Wilcox*, 978 F. Supp. 2d 983, 994 (D. Minn. 2013)(motion for preliminary injunction on a conversion claim denied on other grounds).

Thus, since the Amended Complaint has stated a valid claim against Sanvik for tortious interference with a prospective advantage and conversion, the claim for an injunction must not be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff Beaulieu respectfully requests that Defendant Sanvik's motion to dismiss be denied in its entirety.

Respectfully submitted,

**HELLMUTH & JOHNSON, PLLC**

Dated: November 27, 2017    By   */s/Russell M. Spence, Jr.*
            Russell M. Spence, Jr., ID No. 0241052
            Alexander J. Farrell, ID No. 390202
            8050 West 78th Street
            Edina, Minnesota  55439
            Telephone:  (952) 941-4005

            **ATTORNEYS FOR PLAINTIFF**