UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA

| | |
|---|---|
| Allen Beaulieu, individually and d/b/a Allen Beaulieu Photography, | Civil No. 16-3586 (DWF/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Clint Stockwell, an individual; Studio 1124, LLC, a Minnesota limited liability company; Thomas Martin Crouse, an individual; Charles Willard "Chuck" Sanvik, an individual, and Does 3 through 7, | |
| Defendants. | |

Russell M. Spence, Jr., Esq., Parker Daniels Kibort LLC, counsel for Plaintiff.

Michael L. Puklich, Esq., Neaton & Puklich, P.L.L.P., counsel for Defendants Clint Stockwell and Studio 1124, LLC.

Edward F. Fox, Esq., Lauren Shoeberl, Esq., & Lewis A. Remele, Jr., Esq., Bassford Remele, counsel for Defendant Charles Willard Sanvik.

Eva Wood, Esq., Outfront MN, counsel for Defendant Thomas Martin Crouse.

                            **INTRODUCTION**

This matter is before the Court on Defendant Charles Willard "Chuck" Sanvik's ("Sanvik") Motion for Attorney Fees pursuant to Federal Rule of Civil Procedure Rule 26, the Court's inherent authority to award fees, and 28 U.S.C. § 1927. (Doc. No. 243.) Sanvik moves for an award against Plaintiff Allen Beaulieu, individually and d/b/a Allen Beaulieu Photography ("Beaulieu"), Beaulieu's attorney, Russell Mick Spence, Jr.

("Spence"), Spence's former law firm, Hellmuth & Johnson, PLLC ("Hellmuth & Johnson"), and Spence's current law firm, Parker Daniels Kibort LLC ("PDK") (collectively, ("Respondents")). Spence filed a memorandum in opposition to Sanvik's motion behalf of himself, Beaulieu, and PDK. (Doc. No. 268 ("Spence Opp.").) Hellmuth & Johnson also filed a memorandum in opposition. (Doc. No. 282 ("Hellmuth & Johnson Opp.").) For the reasons set forth below, the Court respectfully denies Sanvik's motion.

## BACKGROUND

The factual background for the above-entitled matter is clearly set forth in the Court's December 7, 2018 Memorandum Opinion and Order and is incorporated by reference here. (*See* Doc. No. 220 ("Sanvik Order").) The Court notes particular facts relevant to this Order below.

Beaulieu filed an initial complaint on October 21, 2016 against Defendants Clint Stockwell ("Stockwell"), Studio 1124, LLC, and Does 1 through 7 for a variety of claims including copyright infringement and conversion. (Doc. No. 1 at 1, 115-21.) On October 10, 2017, Beaulieu filed an amended complaint, adding Sanvik as a defendant.[1] (Doc. No. 47 ("Am. Compl.") at 1.) Beaulieu brought claims against Sanvik for conversion, tortious interference with prospective economic advantage, and injunctive relief. (Am. Comp. ¶ 92-94, 98-102, 114-118.) Sanvik filed a motion to dismiss on November 6, 2017. (Doc. No. 54.) On February 14, 2018, the Court dismissed

---

[1] Beaulieu also added Defendant Thomas Michael Crouse ("Crouse"). (Am. Compl. at 1.)

Beaulieu's claim for tortious interference with a prospective economic advantage, but allowed his claims for conversion and injunctive relief to proceed. (Doc. No. 69 at 4- 7.)

During discovery, each party filed a motion to compel, respectively alleging that the other failed to produce all relevant documents and material. (Doc. Nos. 85, 121.) Initially, Beaulieu alleged that Sanvik failed to comply with an August 2017 subpoena requiring him to produce documents and responsive information stored online or on his social media accounts.[2] (Doc. No. 88.) On April 17, 2018, Magistrate Judge Hildy Bowbeer denied the motion without prejudice, so long as Sanvik's counsel confirmed that Sanvik conducted a reasonably diligent search for documents and information at issue. (*See* Doc. No. 100.)

Just over two months after the close of discovery, Sanvik alleged that recent events alerted him to relevant documents and materials that existed, yet had not been produced by Beaulieu.[3] (Doc. No. 123 at 4-5.) He filed a motion to compel a forensic analysis of Beaulieu's personal electronic devices, email, and social media accounts, and to produce all relevant and responsive documents resulting from that examination. (Doc. No. 121 at 1.) He also requested that Beaulieu supplement his discovery responses and

---

[2]   Beaulieu's motion to compel was not limited to Sanvik; in relevant part, he also alleged that Crouse failed to comply with the August 2017 subpoena. (Doc. No. 85.) With respect to Crouse, Judge Bowbeer granted him additional time to comply with the subpoena, and to appear for his deposition no later than May 31, 2018. (Doc. No. 100.)

[3]   Some of the documents produced included correspondence from an online email account that neither Spence nor any of his staff had searched. (Doc. No. 142 ("Hrn'g Transcript.") at 43.) Other documents related to a contract with the Minnesota Historical Society to publish a book of Prince photographs. (*See* Doc. No. 133 ("Discovery Order".)

3

production with respect to any pending efforts to commercialize any Prince photographs or to publish any Prince books, to appear for a supplemental deposition to address any information provided with the referenced forensic examination, and for the costs and attorney fees incurred in connection with his motion. (*Id.* at 1-2.) He alleged Rule 26 violations and questioned the sufficiency of the pre-suit investigation. (Doc. No. 123 at 5.) Spence argued on behalf of Beaulieu that many of the documents had already been produced, and that other documents simply were not relevant. He argued further that Beaulieu was entitled to costs and fees because Sanvik's motion was untimely and brought for the improper purpose of harassment. (Doc. No. 128 at 1-2.)

On July 20, 2018, Judge Bowbeer granted Sanvik's motion only insofar as his request for a supplemental deposition. (Discovery Order at 2.) While she denied Sanvik's request for a forensic analysis, she found that Spence's failure to search the online email account was "a major oversight," and led her to question the diligence of his search for responsive relevant documents. (Hrn'g Transcript at 64.) To this end, she ordered Spence, or a trusted employee, to meet with Beaulieu in person to review all of Sanvik's discovery requests, to discuss with him the locations where relevant and responsive documents are likely to be found, and to search those locations or verify that the searches previously conducted were adequate, and to submit a sworn declaration after doing so. (*See* Discovery Order at 1-2.) She also found that the materials related to the book contract were highly relevant and ordered production of all communications related to Beaulieu's efforts and involvement with the commercialization of his photos. (*Id.*

4

at 2.) Finally, Judge Bowbeer declined to award costs or fees to either party. (*Id.*) Neither party filed an objection to her order.

Beaulieu's late production resulted in 1,850 additional pages of documents, 1,163 of which were produced on August 3, 2018 pursuant to Judge Bowbeer's Discovery Order.[4] Beaulieu subsequently produced an additional 63 pages on August 31, 2018, and another 134 pages on September 27, 2018. (Beeman Decl. ¶¶ 16-17.) The late production included documents cited in the Court's subsequent summary judgment order. (*See, e.g.*, Sanvik Order at 4.)

On September 7, 2018, Defendants Stockwell and Sanvik filed separate motions for summary judgment. (Doc. Nos. 147, 164.) On December 7, 2018, the Court granted both motions and dismissed with prejudice all of Beaulieu's claims against Stockwell and Sanvik.[5] (Sanvik Order; Doc. Nos. 221.) Thereafter, Sanvik filed this motion for an award of attorney fees.

Sanvik alleges that Beaulieu's attorney, Spence, abused the judicial process through various acts of misconduct including discovery violations, an improper pre-suit investigation, distortions of the record and misrepresentations to the Court, and refusal to dismiss the case after exculpatory discovery. (Doc No. 254 ("Sanvik Memo.") at 20-27.) Spence and his respective firms argue that Sanvik's motion is not grounded in fact or law

---

[4] Beaulieu produced 477 of the pages prior to Judge Bowbeer's Discovery Order, but one month after the close of discovery. (Doc. No. 270 ("Beeman Decl.") ¶ 11.) He produced 12 more of the pages on July 17, 2018. (*Id.* ¶ 12.)

[5] The Court subsequently dismissed with prejudice all of Beaulieu's claims against the remaining defendants. (*See* Doc. No. 232.)

5

and ask the Court to consider awarding them reasonable attorney's fees and costs in responding to the motion. (*See* Spence Opp. at 26-26; Hellmuth & Johnson Opp. at 6-9.) Spence and his respective firms maintain that Spence did nothing close to reaching the high bar justifying sanctions, and that sanctions against his current and former law firm which require an even higher bar, are particularly misplaced. (*See* Spence Opp. at 56-60; Hellmuth & Johnson Opp. at 9-13.)

## DISCUSSION

**I.** **Legal Standard**

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract proves otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 22-53 (2010)). Although the American Rule prohibits the shifting of fees in most cases, there are exceptions for which federal courts have inherent power to assess attorney fees against counsel. *Chambers v. NASCO*, 501 U.S. 32, 45 (1991)). For example, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). Attorney fees may also be imposed as a sanction for violating the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26(g)(3). Sanvik brings his motion pursuant to Fed. R. Civ. P. 26(g), the Court's inherent authority to award fees, and 28 U.S.C. § 1927.

6

### A. Fed. R. Civ. P. 26(g)

Federal Rule of Civil Procedure 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26-37." Fed. R. Civ. P. 26(g), adv. comm. notes 1983 amendments. The Supreme Court described the spirit and purpose of the discovery rules as "a device to clarify the basic issues between the parties" and to "ascertain[ ]the facts, or information as to the existence of whereabouts of facts, relative to those issues" so that "civil trials in the federal courts no longer need to be carried on in the dark." *Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947.)

To enable each party to obtain the fullest possible knowledge of the issues and facts before trial, Rule 26(g)(1) requires attorneys to certify that each discovery request, response, or objection is complete and correct at the time it is made, consistent with the Federal Rules of Civil Procedure, nonfrivolous, not submitted for an improper purpose, and not unreasonable or unduly burdensome. Fed. R. Civ. P. 26(g)(1)(B).

Rule 26(g)(3) imposes required sanctions on attorneys or parties who violate Rule 26(g)(1). *See* Fed. R. Civ. P. 26(g)(3); *Spv-LS, LLC v. Transamerica Life. Ins. Co.*, 912 F.3d 1106, 1113 (8th Cir. 2019). Rule 26(g) sanctions are designed "to deter abuse and compensate the opposing party for all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *Johnson Intern. Co. v. Jackson Nat. Life Ins. Co.*, 19 F.3d 431, 439 n.10 (8th Cir. 1994) (internal quotation marks and citation omitted). Such sanctions may include monetary penalties, such as expenses and attorneys' fees. *Id.*

### B.     The Court's Inherent Authority to Award Fees

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "These inherent powers include the ability to supervise and 'discipline attorneys who appear before it' and discretion 'to fashion an appropriate sanction for conduct which abuses the judicial process." *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012) (quoting *Chambers*, U.S. at 43-45 (1991)). The court's inherent power "reaches both conduct before the court and that beyond the court's confines" to secure compliance with the court's orders. *Chambers*, 501 U.S. at 44.

One permissible sanction is an assessment of attorney's fees. *Goodyear Tire*, 137 S. Ct. at 1186. The United States Supreme Court has made clear, though, that such a sanction must be compensatory rather than punitive in nature. *Goodyear Tire*, 137 S. Ct. at 1186. Accordingly, there must be a causal link between the amount of the sanction and the litigant's misbehavior. *Id.* "That kind of causal connection . . . is appropriately framed as a but-for test" such that the complaining party "may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). "The essential goal" in fashioning the sanction is "to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. Therefore, a district court "may take into account [its] overall sense of a suit and may use estimates in calculating and allocating" costs. *Goodyear Tire*, 137 S. Ct. at 1187.

8

"In exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start of some midpoint of a suit, in one fell swoop." *Id.* For example, "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may [ ] make a blanket award." *Id.* at 1188. Similarly, "[i]f a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position—then the court may grant all fees incurred from that moment on." *Id.*

"The inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 49. Notwithstanding, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 49. The court has discretion to rely on its inherent power to provide an appropriate sanction if it finds "neither the statute nor the Rules are up to the task." *Id.*

## C. 28 U.S.C. ¶ 1927

Pursuant to 28 U.S.C. § 1927, "a court may require counsel to personally satisfy attorneys' fees reasonably incurred by an opposing party when counsel's conduct 'multiplies the proceedings in any case unreasonably and vexatiously'." *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006) (citing Fed. R. Civ. P. § 1927). Courts should construe § 1927 strictly. *Spv-LS, LLC*, 912 F.3d at 1113. The Eighth Circuit has indicated that "the language of § 1927 appears to require both a finding of objectively unreasonable behavior and a finding of bad faith." *NAACP Special*

*Contribution Fund v. Atkins*, 908 F.2d 336, 340 (8th Cir. 1990). However, the Eighth Circuit has also said that a court may impose § 1927 sanctions "only 'when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court'." *Spv-LS, LLC*, 912 F.3d at 1113 (quoting *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999). "The imposition of sanctions is a serious matter and should be approached with circumspection." *Lee*, 177 F.3d at 718 (citing *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987).

## II. Analysis

As a preface, the Court notes a marked lack of civility on behalf of both parties including personal attacks, innuendos, and references to events outside the bounds of this case. None of this, including the allegation that this case was brought as a publicity stunt, have any bearing on the Court's analysis. Further, the Court declines to re-litigate the foundation of its Sanvik Order. The Court's decision in this matter is based on an objective application of the law to the relevant facts.

Sanvik relies heavily on *Rottlund Co. Inc., v. Pinnacle Corp.*, 222 F.R.D. 362 (D. Minn. 2004) to argue that a pattern of misconduct justifies his fee award. In *Rottlund*, the court imposed sanctions on defendant and its law firm for abuse of the judicial process, discovery incompetence—including deliberately concealing information highly relevant to the case, and defiance of court orders. 222 F.R.D. at 386. The court imposed an award of attorney fees and costs directly related to the expenses that would not have been sustained had defendant conducted itself properly. *Id.* at 387. As described below, the Court finds that *Rottlund* is distinguishable.

Sanvik argues that Spence's conduct mirrors that sanctioned in *Rottlund*. He makes a series of accusations against Spence including Spence's failure to conduct a proper pre-suit investigation, failure to disclose highly relevant documents, failure to comply with the Discovery Order's deadline, misrepresentations to the Court, distortion of the record, and refusal to dismiss the case after exculpatory discovery. (Doc No. 254 ("Sanvik Memo.") at 20-27.) He argues that Spence's law firms are liable for Spence's conduct under a theory or respondeat superior. (*See* Sanvik Memo. at 29-32.)

The Court first observes that Sanvik's argument with respect to deficient discovery was already litigated. After Judge Bowbeer denied his request for costs and fees, Sanvik had the opportunity to object to her Order. *See* Fed. R. Civ. P. 72(a); L.R. 72.2 (a)(1). Sanvik did not object. Accordingly, the Court declines to entertain this argument as an independent basis for sanctions. Nonetheless, Judge Bowbeer's finding that Spence's discovery failure was "a major oversight" weighs in the totality of the Court's analysis.

With respect to the pre-suit investigation, Spence maintains that it was reasonable, measured, thorough, and that it uncovered evidence that justified his amended complaint. ("Spence Opp. 26.) While this may be in part true, the Court is concerned with what Spence did *not* do. The record reflects that Spence did not perform a complete examination of his client's electronically stored data prior to filing his suit. Sanvik argues that if Spence had reviewed Beaulieu's online e-mail account prior to amending his complaint, he would have concluded that Beaulieu's conversion claim against Sanvik

lacked merit. Accordingly, he argues that he is entitled to a full award of the attorney fees he incurred to defend against the meritless action.

Despite this gross oversight, the Court is not convinced that even if Spence was aware of the emails at the outset of the case, it would have altered the course of subsequent proceedings. Indeed, Spence still contends that the account did not contain anything exculpatory or even relevant and pursued his case with a colorable legal theory. While the Court disagrees about the relevance of the material, the Court finds that nothing in the online email account was so fatal to the case that it warranted immediate dismissal. In *Rottlund*, an upfront disclosure would have altered subsequent proceedings because the information was so undeniably fatal to defendant's position that no reasonable attorney would have continued to pursue his argument. 222 F.R.D. at 366. Here, an upfront disclosure may have impacted the strength and emphasis of each party's argument, however, there was nothing so fatal that a reasonable attorney was obligated to dismiss the case. Accordingly, the Court declines to issue sanctions on this action alone.

Sanvik also alleges that Spence distorted the record and made false representations to the Court with respect to when and why documents were produced, how documents were presented to the Court, and the reason for a delay in completing the forensic analysis of Sanvik's electronics.[6] Spence strongly contests Sanvik's representation of his actions. Well acquainted with the record, the Court agrees that Spence's actions reflect a

---

[6] With respect to the forensic analysis delay, Spence failed to disclose that the company completing the analysis notified him in December 2017 that they intended to discontinue their work until an alternative plan for compensation was implemented. (*See* Doc. No. 108).

degree of disrespect for the judicial process. Nonetheless, the Court finds that Sanvik did not suffer prejudice from Spence's representations, nor did they delay or unreasonably multiply the proceedings.[7] Further, the Court cannot confirm that the ambiguity of Spence's representations manifested intentional or reckless disregard for his duties to the Court, as opposed to oversight or poor judgment. *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445. Notwithstanding, they fall short of the high bar necessary to impose sanctions.

Finally, Sanvik alleges that upon the close of discovery, there was nothing in the record to indicate that he ever had physical possession of Beaulieu's photos, or that he had ever willfully interfered with them. He argues that a reasonable attorney would have concluded that the claim was no longer viable because it had no reasonable likelihood of success and would have accepted one the three requests Sanvik made to dismiss the case against him.

Here, reasonable minds may differ over the strength of Spence's case. While attorneys are entitled to advocate zealously for their clients, "they must do so in accordance with the law, the court rules, and the orders of the court." *Vallejo v. Amgen*, 903 F.3d 733, 750 (8th Cir. 2018). Accordingly, an attorney may not recklessly pursue a baseless claim such that it unreasonably multiplies the proceedings.

---

[7] *Rottlund* is distinguishable because an up-front disclosure with respect to defendant's contacts with the forum state would have obviated the basis of defendant's motion to dismiss for lack of personal jurisdiction. Here, aside from the late production of discovery which the Court declines to relitigate, there is nothing in the record to suggest that but for Spence's improper conduct, the proceedings were unreasonably multiplied.

13

Recognizing that the nature of a conspiracy does not require physical proof that Sanvik possessed any photos[8], and mindful of the role of circumstantial evidence, the Court declines to issue a sanction because Spence pursued the case after the close of discovery. While the Court ultimately found the conversion claim against Sanvik meritless, the claim was supported with colorable legal arguments. Sanctions are not appropriate simply because a case appears weak in hindsight. *See E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 996 (8th Cir. 2006) (noting that even when a claim is ultimately meritless, sanctions are not appropriate where plaintiffs had colorable legal arguments to support their claims).

While no single action rises to a level warranting sanction, the pattern of behavior demonstrates a lack of respect for the judicial process by Spence. Nonetheless, the Court cannot conclude with certainty that Spence acted vexatiously or in bad faith, or that he unreasonably multiplied the proceedings. *See Burull v. First. Nat. Bank of Mpls.*, 831 F.2d 788, 799 (8th Cir. 1987) (affirming district court's denial of sanctions when it could not conclude with certainty that attorney acted vexatiously or in bad faith). Further, there is no single point in time at which the Court can conclude that "but-for" Spence's actions, no additional fees would have been incurred. *See Goodyear Tire*, 137 S. Ct. at 1187 (specifying that a complaining party may recover only the portion of his fees that he would not have paid but-for the misconduct); *see also*, *Johnson Intern. Co.*, 19 F.3d at

---

[8] The Court observes that while physical possession is not required to prove a conspiracy, Spence did allege that Sanvik had physical possession of the photos. (Am. Compl. ¶¶ 85, 87.)

14

439 n.10 (clarifying that Rule 26(g) sanctions should compensate the opposing party for all expenses, that would not have been sustained had the opponent conducted itself properly). Accordingly, the Court finds that even the totality of Spence's actions fail to meet the high bar necessary to impose sanctions under Rule 26, the Court's inherent authority, or 28 U.S.C. § 1927.

## CONCLUSION

After a careful review of the parties' submissions, the Court declines to grant Sanvik's motion for attorney fees. While the totality of Spence's conduct verges on abuse of the judicial process, it falls short of the high bar necessary to impose sanctions under Rule 26, the Court's inherent authority, or 28 U.S.C. § 1927.

The lack of civility demonstrated in this case has not set an example for how the Court expects attorneys to zealously advocate on behalf of their clients. The Court cautions that it will be less tolerant of similar behavior in the future.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that Charles Willard "Chuck" Sanvik's Motion for Attorney Fees (Doc. No. [243]) is **DENIED**.

Dated: August 21, 2019            s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge